## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **CHARTIS SPECIALTY INSURANCE COMPANY, an Illinois Corporation; ILLINOIS NATIONAL INSURANCE COMPANY, an Illinois Corporation; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Corporation,** ) ) ) ) ) ) ) ) | |
| | ) **Case No.** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **BANNER SUPPLY COMPANY; BANNER SUPPLY COMPANY, INC; BANNER SUPPLY COMPANY FORT MYERS, LLC; BANNER SUPPLY COMPANY TAMPA, LLC; BANNER SUPPLY COMPANY POMPANO, LLC; BANNER SUPPLY COMPANY PORT ST. LUCIE, LLC; and BANNER SUPPLY INTERNATIONAL, LLC, Florida corporations,** ) ) ) ) ) ) ) ) ) ) | |
| | ) |
| **Defendants.** ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Chartis Specialty Insurance Company, Illinois National Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA, sue Defendants, Banner Supply Company, Banner Supply Company, Inc., Banner Supply Company Fort Myers, LLC, Banner Supply Company Tampa, LLC, Banner Supply Company Pompano,

LLC, Banner Supply Company Port St. Lucie, LLC, and Banner Supply International, LLC, and allege as follows:

## INTRODUCTION

1.        Chartis Specialty Insurance Company ("CSIC") (formerly known as American International Specialty Lines Insurance Company), Illinois National Insurance Company ("Illinois National"), and National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), seek a declaration under 28 U.S.C. §§ 2201-2202, and in accordance with Florida law, that they owe no duty to defend or indemnify Defendants Banner Supply Company; Banner Supply Company, Inc.; Banner Supply Company Fort Myers, LLC; Banner Supply Company Tampa, LLC; Banner Supply Company Pompano, LLC; Banner Supply Company Port St. Lucie, LLC; and Banner Supply International, LLC under seven liability insurance policies issued by Plaintiffs with respect to claims related to allegedly defective drywall distributed by Defendants.

2.        There is an actual, present, and bona fide controversy between the parties concerning the alleged coverage obligations of Plaintiffs to defend and indemnify Defendants with respect to the claims involving allegedly defective drywall.

## PARTIES

3.        CSIC is an Illinois corporation with its principal place of business in New York.

4.        Illinois National is an Illinois corporation with its principal place of business in Illinois.

5.      National Union is a Pennsylvania corporation with its principal place of business in New York.

6.      Banner Supply Company; Banner Supply Company, Inc.; Banner Supply Company Fort Myers, LLC; Banner Supply Company Tampa, LLC; Banner Supply Company Pompano, LLC; Banner Supply Company Port St. Lucie, LLC; and Banner Supply International, LLC are Florida corporations with their principal places of business in Florida.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332, as amended.  This matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c) because one or more of the defendants resides and conducts business in this district, and a substantial part of the events giving rise to this claim occurred in this district.

9.      Plaintiffs are entitled to declaratory relief under 28 U.S.C. § 2201 and under Florida substantive law.

## GENERAL ALLEGATIONS

### The Defective Drywall Claims

10.     In 2009, Defendants were named in approximately 146 lawsuits (referred to herein as the "Underlying Lawsuits") related to defective Chinese drywall.

11.     The plaintiffs in the Underlying Lawsuits generally alleged that Defendants supplied defective drywall from China or elsewhere that emits a noxious gas that has a rotten egg odor or smells like spent fireworks, and that corrodes residential wiring, appliances, and

other metal components causing the malfunction of HVAC units, televisions, stereos, microwaves, and other household products.   They alleged that the smell and corrosive properties are caused by the release of sulfur-based compounds from the drywall.   Claimants also complain of injuries including respiratory problems, bloody noses, and eye infections.

12.   The Complaints in the Underlying Lawsuits generally contain counts for breach of express warranty, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, and strict products liability.   The plaintiffs in the Underlying Lawsuits are seeking damages for the costs of inspection and the costs to remove and replace the defective drywall, adjoining components, electrical wiring, interior finishes, and personal property, and diminution in property value.   The plaintiffs in the Underlying Lawsuits also claim damages for injuries as a result of allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems, and other health concerns.

13.   All of the Complaints filed in the Underlying Lawsuits contain substantially similar, if not identical, allegations against Defendants regarding defective Chinese drywall.

14.   The Complaints filed in the Underlying Lawsuits generally allege:

a.   The drywall used by the Defendants in the Plaintiffs' home is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes damage and corrosion to home structure and mechanical systems ... and other household items.   The compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure.   These chemical compounds cause and have caused dangerous health consequences including, among other things, respiratory problems, sinus problems, eye irritation and nose bleeds.

b.   Hydrogen sulfide was found in previous testing that the company conducted on the Chinese drywall: "Our previous studies indicate, however, that carbon disulfide, carbonyl sulfide, and hydrogen sulfide are gases that can be associated with emission from Chinese drywall."

    c.  ... other published reports from independent environmental testing firms and building experts have said the source of the drywall problem is waste materials from the scrubbers of coal-fired power plants used to make the drywall in China.

15.    A number of the Complaints in the Underlying Lawsuits (see **Exhibit A**) also allege:

    a.  Hydrogen sulfide ("H2S"), one of the chemicals found to have been released from drywall, is considered a broad-spectrum poison, meaning that it can poison several different systems in the body, although the nervous system is most affected.

    b.  Exposure to lower concentrations of sulfides can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs.

    c.  As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' home and bodies have been exposed to the defective drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

    d.  As a direct and proximate result of Defendants' use of defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiffs have suffered, and continue to suffer damages for injuries from medical ailments, including but not limited to respiratory problems, sinus problems, eye irritations and nosebleeds, in addition to the creation of noxious odors, which smell like "rotten eggs."

    e.  Medical monitoring is a necessary component of the relief the Court should order because some of the sulfur compounds being emitted from the defective drywall are very hazardous....

16.    In addition, a number of other Complaints filed in the Underlying Lawsuits (see **Exhibit B**) contain the following allegations:

    a.  The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage Plaintiffs' property.

    b.  The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using gypsum for drywall with levels of

sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion....

## Drywall Studies

17.    Beginning in or about 2009, various Federal and State agencies, as well as private testing firms, analyzed drywall and reported that certain drywall, including drywall manufactured in China, contains and emits sulfur-related chemical compounds that are associated with corrosion of metal, damage to other property, and complaints of odors and adverse health effects.

18.    In October 2009, the United States Consumer Product Safety Commission (CPSC) released several reports concerning testing on Chinese and domestically produced drywall.  Those reports concluded that the Chinese drywall contained higher concentrations of elemental sulfur compared to the domestic drywall.  Further, the Chinese drywall emitted higher levels of total volatile sulfur compounds than did the domestic drywall.

19.    On or about November 23, 2009, the CPSC released reports regarding additional drywall testing.  The CPSC reported that in a fifty-one home study, hydrogen sulfide gas was detected in homes with defective drywall in concentrations that were statistically higher than in homes without such drywall.  Further, examination of copper wiring in homes containing defective drywall exhibited corrosion.

## The Plaintiffs' Policies

20.    The following Plaintiffs issued the following umbrella policies (referred to collectively herein as the "Policies") to the following Defendants as named insureds:

(a)     National Union Fire Insurance Company of Pittsburgh, PA policy 5683249 (January 1, 2004 to January 1, 2005) issued to Banner Supply Co., Inc, a copy of which is attached as **Exhibit C**;

(b)     Illinois National Insurance Company policy 3835949 (January 1, 2005 to January 1, 2006) issued to Banner Supply Co., Inc, a copy of which is attached as **Exhibit D**;

(c)     National Union Fire Insurance Company of Pittsburgh, PA policy 9300273 (January 1, 2006 to January 1, 2007) issued to Banner Supply Co., a copy of which is attached as **Exhibit E**;

(d)     National Union Fire Insurance Company of Pittsburgh, PA policy 8688025 (January 1, 2007 to January 1, 2008) issued to Banner Supply Co., Inc, a copy of which is attached as **Exhibit F**;

(e)     American International Specialty Lines Insurance Company (now CSIC) policy 3954862 (January 1, 2007 to January 1, 2008) issued to Banner Supply Co., Inc, a copy of which is attached as **Exhibit G**;

(f)     National Union Fire Insurance Company of Pittsburgh, PA policy 5543482 (January 1, 2008 to January 1, 2009) issued to Banner Supply Co., Inc, a copy of which is attached as **Exhibit H**; and

(g)     National Union Fire Insurance Company of Pittsburgh, PA policy 7606364 (January 1, 2009 to January 1, 2010) issued to Banner Supply Co., Inc., a copy of which is attached as **Exhibit I**.

21.     Defendants are not entitled to coverage under the Policies with respect to claims arising from allegedly defective drywall installed in the homes of the plaintiffs in the Underlying Lawsuits unless Defendants first satisfy all conditions for coverage and coverage is not otherwise excluded.

22.    Any insurance provided by the Policies is provided on an excess basis, and Plaintiffs have reserved their rights to deny coverage pursuant to the Policies.

23.    Defendants are currently being defended by their primary insurers and have not exhausted the limits of their primary policies.

24.    The Total Pollution Exclusion Endorsement attached to each policy bars coverage for "bodily injury" and "property damage," if any, associated with defective drywall, arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in each policy.

25.    Coverage is barred to the extent that a claimant seeks relief from an insured Defendant that does not constitute "damages," as that term is used in the Policies. Equitable relief, including medical monitoring, or economic losses associated with defective drywall do not constitute covered damages within the Policies.

26.    Coverage is barred for damages that do not constitute "bodily injury" or "property damage," as those terms are defined in the Policies. The mere presence of defective drywall is not "property damage," and there is no coverage under the Policies for any costs arising out of the process of repairing or replacing the drywall.

27.    Coverage is barred for "bodily injury" or "property damage" associated with defective drywall that is not the result of an "occurrence," as that term is defined in the Policies.

28.    Coverage is barred to the extent that "bodily injury" or "property damage," if any, associated with defective drywall did not occur during the policy period at issue.

29.     Coverage is barred for "bodily injury" or "property damage," if any, for which the insured is obligated to pay damages associated with defective drywall by reason of the assumption of liability in a contract or agreement.

30.     Coverage is barred for "property damage," if any, associated with defective drywall to property an insured owns, rents, or occupies.

31.     Coverage is barred for "property damage," if any, associated with defective drywall to an insured's work that is included in the "products completed operations hazard," as defined in the Policies.

32.     Coverage is barred to the extent that any indemnity for "property damage" or "bodily injury" does not exceed the applicable underlying insurance coverage.

33.     Coverage is barred for "property damage," if any, to "impaired property," as defined in the Policies, or to property that has not been physically injured, associated with defective drywall, arising out of a defect in an insured's product or work, or a delay or failure by an insured or anyone acting on an insured's behalf to perform a contract or agreement in accordance with its terms.

34.     Coverage is barred under each Policy as to any Defendant that is not an insured under that Policy.

### Plaintiffs' Communications with Defendants

35.     Plaintiffs issued a reservation of rights letter to Defendants advising Defendants that Plaintiffs were reserving their rights to decline coverage. The letter referred to the policy terms on which Plaintiffs may rely to decline coverage, including the terms noted above.

## COUNT I
## DECLARATORY RELIEF
### (All Defendants)

36.     Plaintiffs incorporate the allegations set forth in paragraphs 1-35.

37.     A controversy exists between Plaintiffs and Defendants regarding the obligation of Plaintiffs to defend and indemnify Defendants under the Policies with respect to claims arising from allegedly defective drywall installed in the homes of the plaintiffs in the Underlying Lawsuits.

38.     The interpretation of the applicable terms of each of the Policies at issue is governed by Florida law.

39.     Coverage is limited or eliminated by terms of each of the Policies for the alleged damages for which Defendants have or will seek coverage under each Policy.

40.     Accordingly, Plaintiffs have no duty to defend or indemnify Defendants in the Underlying Lawsuits under any of the Policies.

41.     The Defendants have not yet requested payment or reimbursement from Plaintiffs of defense costs that Defendants have incurred to date in defending the Underlying Lawsuits.  To the extent that Plaintiffs do incur any such defense costs in the future, they will be entitled to reimbursement of those defense costs from each Defendant to the extent that Plaintiffs have no coverage obligations to Defendants under the Policies.

**WHEREFORE**, Plaintiffs request the following declaratory relief:

1.    A judgment in favor of Plaintiffs declaring that Plaintiffs have no duty under the Policies to defend or indemnify Defendants with respect to any claims or damages arising from allegedly defective drywall installed at the homes of the plaintiffs in the Underlying Lawsuits;

2.    Such other relief as the Court may deem just and proper.

DATED this 1st day of February, 2010.

Respectfully submitted,

Cindy L. Ebenfeld, Esq.
Florida Bar No. 0980579
HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104
Cooper City, Florida 33026
Tel: (954) 624-8700
Fax: (954) 624-8064
cebenfeld@mhickslaw.com
*Co-Counsel*

Joseph A. Hinkhouse, Esq.
Richard A. Hodyl, Esq.
Joshua A. Boggioni, Esq.
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Tel: (312) 784-5400
Fax: (312) 784-5499
jhinkhouse@hww-law.com
rhodyl@hww-law.com
jboggioni@hww-law.com
*Counsel for Plaintiffs*

g:\chartis\banner supply\pldgs\complaint.doc
4829-1574-1701, v. 3